THE STATE OF OHIO, APPELLEE, *v.* HALE, APPELLANT.

(No. 9417—Decided October 21, 1969.)

*Mr. C. Howard Johnson,* prosecuting attorney, *Mr. John E. Peck* and *Mr. David H. Bodiker,* for appellee.
*Mr. Frederick M. Isaac,* for appellant.

HOLMES, J. This matter involves an appeal of a conviction of murder in the first degree.

The facts in brief are that three boys, one of which was the defendant, appellant herein, had, at approximately 9 p. m., on September 14, 1968, entered a small neigh-

borhood grocery store owned and operated by Mr. and Mrs. Hadley Campbell and located in the north end of the city of Columbus.

One of the boys asked for change for a $5 bill, and Mrs. Campbell went behind the counter to the cash register to get the change for him. The defendant then asked for a certain brand of hair oil, and Mrs. Campbell then moved to that part of the store to offer assistance, whereupon, as stated in Mrs. Campbell's testimony, the defendant pulled out a gun and told Mrs. Campbell that " 'This is a stickup.' "

During that time, one of the other boys had jumped across the store counter and had begun extracting the cash from the register.

At that point, Mr. Campbell, who had been in the living quarters adjoining the store, became aroused as to what appeared to be unusual activity in the store and proceeded to the area.

Arriving upon the scene and observing the hazardous situation, Mr. Campbell, according to his wife's testimony, uttered a plea " 'Oh, mister, please don't shoot me.' " Nevertheless, the third boy, Grady, who had been standing guard at the door, opened the door, stuck the gun back through the doorway and shot Mr. Campbell twice, killing the latter almost immediately.

It would appear from the testimony that the defendant had, prior to the shots having been fired, run from the store and headed back to the automobile in which the trio had arrived.

There was no dispute at the trial of the case that an armed robbery was committed at the Campbell Grocery. Nor was there a disagreement that Mr. Campbell had been shot by one of the boys, i. e., Grady, as the latter was departing from the store.

The defense presented evidence attempting to show that Hale was a totally innocent bystander in the proceedings, and that, although present, he was not actually a participant in either the robbery or the shooting.

The defendant took the stand and testified that he had not been informed by the other two boys that they were

going to commit a robbery and that he was only taking a ride with them with the understanding that they were to make a purchase somewhere in the north end.

The defendant testified further that he did not have a gun in his possession at the time of the incident, nor had he pointed one at Mrs. Campbell stating that " 'This is a stickup.' "

The defendant testified also that he attented church every week and that he had done so since moving to Columbus five years previously.

Mrs. Hazel Hale, mother of the defendant, testified for the defense to the effect that her son was very regular in his attendance at church. Further, the mother, in response to inquiry of defense counsel, responded that to her knowledge her son had never been in any kind of trouble prior to the current charges.

On cross-examination of Mrs. Hale, the prosecutor asked whether the defendant had ever been in trouble with the police. Mrs. Hale answered, "No, no more than being out after 11:00 o'clock, * * *." Mrs. Hale was then asked whether her son, Jewell, had ever been arrested, whereupon defense counsel objected and the court sustained the objection.

There was additional direct testimony on behalf of the defendant by one Landis C. Brown, the minister of Ebeneezer Baptist Church in Columbus. Rev. Brown testified that the defendant attended church on a regular basis, that he took part in church functions, that the defendant was very honest and honorable, and that he was truthful.

Further on direct examination, Rev. Brown testified that, as far as he knew, the defendant was a good boy, and that "This is the first time we ever heard about Jewell, anything wrong."

Also, the defense placed in evidence the testimony of one Susie Allen, to the effect that the defendant was regular in his attendance at church and that he was active in church functions, and, to the defense counsel's question as to whether she had the means of knowing the defendant's reputation in the community as to honesty, character, and morals, she answered as follows:

"I have never heard nobody say that Jewell Hale has ever did anything wrong or been bad or nothing of the kind, this is the first thing I ever heard of Jewell Hale and it surprised me when I heard that."

In rebuttal, the state called Mr. Andrew McFarland, the Clerk of the Franklin County Juvenile Court, who testified that on June 15, 1967, an affidavit was filed charging Jewell Hale with breaking and entering in the night season and that he was subsequently found to be a delinquent minor and was placed on probation.

The defense counsel objected to the introduction of the juvenile record and to all testimony of any occurrence while the defendant was a juvenile.

The trial court overruled the objection stating that, although the question of character is not ordinarily proper testimony, in this instance the question of character was raised as an issue by the defendant.

Another witness, one Steven Freedman, a Franklin County Juvenile Probation Officer, was called on behalf of the state in rebuttal.

Mr. Freedman identified the record as referred to by the prior witness, McFarland, as being that of Jewell Hale. He testified further that he had served as a Probation Officer for Jewell Hale; and then Mr. Freedman physically identified Jewell Hale as the defendant in this matter.

The defense counsel objected to all such testimony and moved for a mistrial. The court overruled the motion and permitted the testimony to stand.

The trial court, realizing the necessity of refining the issue of the defendant's character, as raised by the testimony, included the following language in its general charge:

"The defendant has offered testimony tending to show his reputation in the community in which he lives. Evidence of this nature is admitted because one who has a good reputation may be less likely to commit a crime than one who lacks that reputation. However, good character or good reputation is not an excuse for crime.

"In determining the guilt or innocence of the defendant, you may consider the testimony of his reputation and give it such weight as you determine it should receive, in connection with all the evidence.

"Normally evidence may not be introduced in a trial concerning any acts committed while a person was a minor. However, when a defendant introduces evidence of his character and reputation, he gives up such protection and testimony may be introduced on his behavior as a juvenile. Such testimony may be considered for the purpose of helping you to determine his credibility or the weight to be given to his testimony and for no other purpose."

At the conclusion of the general charge of the court, the defense counsel objected to the above portion of the charge and moved, again, for a mistrial. The court overruled such motion.

The jury returned a verdict finding the defendant guilty of murder in the first degree with a recommendation of mercy, and judgment was entered thereon.

The defendant appeals from such judgment assigning the following as error:

"It was prejudicial error for the trial court to permit direct testimony concerning the disposition of defendant-appellant in a prior matter before the Juvenile Court."

The general question as posed by the defendant is whether the trial court erred in permitting the state, over the objection of the defendant, to introduce direct testimony concerning the disposition of the defendant in a prior matter before the Juvenile Court.

We think, more specifically, that the question presented in this cause is whether the trial court erred in permitting the state, on rebuttal, to present direct testimony relating to the defendant's prior juvenile record, where the defendant had previously introduced witnesses who testified as to his good character and conduct, and where the court had disallowed cross-examination of such witnesses on the question of the defendant's prior involvement with the police.

The early history of criminal law in Ohio, as else-

where, did not differentiate between adults and minors who had arrived at the age of criminal responsibility. However, over the years, society's attitude toward juvenile offenders dictated a change in legal philosophy. Rightly, the thought now prevails that erring youth should be taken in tow by the state in order to protect them from further wrong doing. The concept is one of reformation rather than one of punishment. 33 Ohio Jurisprudence 2d 6, Juvenile Courts, Section 2.

In this vein, the present Juvenile Court Law of Ohio, as contained in Chapter 2151 of the Revised Code, was enacted. As stated in 33 Ohio Jurisprudence 2d 9, Juvenile Courts, at Section 4:

"* * * The purpose of the law is to save minors of tender years from prosecution and conviction on charges of misdemeanors and crime and to relieve them from the consequent stigma attached thereto; * * *"

Juvenile delinquency is not considered a crime in Ohio. In fact, the Juvenile Court Law specifically provides that a child adjudicated to be a delinquent is not a criminal by reason of such adjudication, Section 2151.35, Revised Code.

The law is equally covetous of protecting the child from improper exposure in another judicial forum of the disposition of the child in a Juvenile Court proceeding, or any evidence given upon the hearing of such juvenile matter.

Section 2151.35, Revised Code, provides in pertinent part:

"* * *

"The judgment rendered by the court under this section shall not impose any of the civil disabilities ordinarily imposed by conviction, in that the child is not a criminal by reason of such adjudication, nor shall any child be charged or convicted of a crime in any court, except as provided in Section 2151.26 of the Revised Code. The disposition of a child under the judgment rendered or any evidence given in the court shall not be admissible as evidence against the child in any other case or proceeding in any other court, except that the judgment rendered

and the disposition of such child may be considered by any court only as to the matter of sentence or to the granting of probation. * * *"

The Ohio Supreme Court, in construing a similar, but earlier, section of the Code, held that it was prejudicial error to permit cross-examination of a defendant in a criminal case as to the commission of offenses prior to the one for which he was being tried, when such inquiry is predicated upon Juvenile Court proceedings against him as a juvenile delinquent. *Malone* v. *State*, 130 Ohio St. 443.

Undoubtedly *Malone* continues to present the applicable law on the subject, where the facts are as they were in such case.

Normally the state may not cross-examine a defendant, or witnesses for the defense, concerning the defendant's involvement in a prior Juvenile Court proceeding, either by way of eliciting testimony as adduced in such prior juvenile proceeding, or by way of revealing the disposition of such prior proceeding.

However, where a defendant in a criminal trial testifies as to his past good behavior and character, a different legal philosophy may appropriately be applied.

Generally in Ohio, as in most jurisdictions, the accused is permitted to prove not only his good reputation, but his good character, in any trial for any criminal offense. *Griffin* v. *State*, 14 Ohio St. 55; *Booker* v. *State*, 33 Ohio App. 338; and see, generally, 15 Ohio Jurisprudence 2d 512, Criminal Law, Section 345.

The good character and the good reputation of the accused are presumed, and he may rely upon the presumption and thus keep his character or reputation from being an issue in the case. *State* v. *Markowitz*, 138 Ohio St. 106; *State* v. *Ross*, 92 Ohio App. 29; *State* v. *Adin*, 7 O. D. Rep. 25.

If the accused does not put his character or reputation in issue, the prosecution cannot offer evidence of his bad character or reputation. *Griffin* v. *State*, 14 Ohio St. 55; *Sabo* v. *State*, 119 Ohio St. 231; *State* v. *Cochrane*, 151 Ohio St. 128.

However, there seems to be general accord with the

proposition that, where a defendant has put his character in issue by introducing evidence in regard thereto, the state is permitted to impeach it. *Sabo* v. *State*, 119 Ohio St. 231; *Lutes* v. *State*, 37 Ohio St. 353; *State* v. *Deboard*, 116 Ohio App. 108.

Section 2945.56, Revised Code, provides that, when the defendant offers evidence of his character or reputation, the prosecution may offer, in rebuttal thereof, proof of his previous conviction of a crime involving moral turpitude, in addition to other competent evidence.

However generally applicable might be the law as espoused by the *Malone case*, the Ohio Supreme Court arrived at a different conclusion in a case involving a defendant in a criminal trial, who testified as to his past good behavior and character.

In the case of *State* v. *Marinski*, 139 Ohio St. 559, the Supreme Court held that no judicial error results from the cross-examination of a defendant in a criminal case where the defendant on direct examination has been permitted to introduce evidence of his life history including the various schools he has attended, where such testimony omitted to mention an incarceration in the Boys' Industrial School.

In the cause now before this court, the trial court, specifically relying on *State* v. *Marinski*, overruled the defendant's objection to the introduction of evidence by the state, in rebuttal, relative to the defendant's juvenile record.

The lower court, in permitting such evidence, determined that the testimony of defendant's mother and two character witnesses operated to waive the protection of Section 2151.35 (G), Revised Code.

The defendant argues that the *Marinski case* is distinguishable from this case and is, therefore, not applicable law. He states that in *Marinski* the following facts led to the court's decision:

(1) Defendant himself testified as to his past history, leaving out certain material which would have been detrimental to him.

(2) It was the defendant rather than another witness who testified.

(3) There had been cross-examination of the defendant in the *Marinski case,* whereas here the prosecution had introduced direct evidence on rebuttal.

It is true that in the instant case the defendant did not attempt to relate his whole past history to the jury. However, he did attempt to convey to the jury, through his testimony, that he was a devout member of his church and an avid attender thereat.

In addition to such testimony of the defendant, which attempted to establish his good character, there was a great deal of additional testimony going to the issue of the defendant's good character.

The issue of character was raised by, or on behalf of, the defendant in the general scheme of the presentation of his case, and it would make no difference on the question of a waiver of the evidentiary prohibition whether the defendant himself, or a witness on his behalf, had in fact raised such issue.

We hold that where a defendant, or a defense witness, raises the issue of the defendant's character and behavior, and the court refuses to permit reasonable cross-examination on such issue, the introduction of a juvenile record as direct evidence to meet such character issue is not prejudicial error.

The allowable breadth of such evidence shall be no further than necessary to counter that evidence of good character as raised by the accused. Whether it be by way of cross-examination or, as in this instance, by way of direct examination on rebuttal, only such evidence as would rebut such evidence of character, or such evidence that would tend to impeach such testimony, should be allowed.

Generally, the accused in a criminal case is limited in presenting evidence that would prove such traits of character that tend to make it improbable that he would, or could have, committed the crime charged. *Griffin* v. *State,* 14 Ohio St. 55; *Booker* v. *State,* 33 Ohio App. 338; *State* v. *Marshall,* 31 Ohio Law Abs. 382.

In like manner, as a general rule, the introduction of such evidence by the accused opens the door for the state to meet such defense evidence by proving such traits as tend to show inclination or capability for the crime charged. *Booker* v. *State*, 33 Ohio App. 338. However, a certain amount of discretion is vested in the trial court as to the extent of an examination into the character or reputation of the accused. *Hanoff* v. *State,* 37 Ohio St. 178.

In the instant case, the defendant testified as to his general character, by way of relating his church affiliation and attendance. Witnesses in defendant's behalf also testified as to his general good character and religious propensities.

More pointedly, the defendant's mother testified to the effect that the defendant had never been in any kind of trouble prior to this matter.

Although seemingly ranging beyond the permissible limits of character testimony, such evidence was allowed in by the trial court. It is our opinion that, having permitted such evidence of behavior on behalf of the defense, the court did not commit prejudicial error in allowing the state to introduce that type of evidence intended to rebut or meet such specific behavioral evidence.

In arriving at such conclusion, we did not feel it entirely necessary to rely upon the theory of waiver. It is this court's opinion that we need not approach this case on the basis of a known waiver by the defendant of the statutory protection from disclosure of his juvenile record.

We prefer to believe that a reasonable interpretation of Section 2151.35 (G), Revised Code, should not deny a judicial tribunal a reasonable search for the truth, and, in so doing, best serve the purpose of justice.

The court in the *Marinski case,* in referring to the prior statute, stated the proposition as follows, at page 560 of 139 Ohio St.:

''That this is a salutary statute properly designed to afford some measure of protection from the indiscretions of youth is beyond cavil. However, it is a vastly different

matter to permit an interpretation that would enable a defendant to employ the statute for the purpose of deception and to accomplish a miscarriage of justice. After all, a trial before a judicial tribunal is primarily a truth-determining process, and if it in any sense loses its character as such, it becomes the veriest sort of a mockery. It must be remembered that it was this defendant himself who not only offered to tell but insisted upon narrating the story of his previous years. To place himself in a favorable light before the court and jury it was necessary for him to tell but part of his history and conceal the remainder. This he did. When this challenge confronted the court and the prosecuting attorney, did this statute render them impotent in their duty to reveal the truth? The participating members of this court are unanimously of the opinion that it did not. The cross-examination was proper."

The defendant argues further that the trial court committed prejudicial error when it permitted the introduction of testimony of a probation officer who identified certain probation records as being those relating to the defendant, Jewell Hale.

Defendant urges that Section 2151.14, Revised Code, prohibits the revelation or exposure of the records of the juvenile probation department, and that such section would prohibit any testimony relating to the records.

The pertinent language of Section 2151.14, Revised Code, is as follows:

"The reports and records of the department shall be considered confidential information and shall not be made public. * * *"

It should be noted that the probation officer, in the trial of this matter, testified only to the fact that he was a probation officer with the Juvenile Branch of the Court of Domestic Relations, that he had served as the probation officer for Jewell Hale, and that the record as previously testified to by the Clerk of the Franklin County Juvenile Court was that of Jewell Hale.

The probation officer then physically identified the defendant, Jewell Hale, in the courtroom.

There was no testimony offered by the probation officer as to the content of any departmental reports or records pertaining to Jewell Hale.

Such testimony was offered only for the limited purpose of identifying the case about which the assistant clerk of courts had testified.

If the testimony of such probation officer had in fact gone further into the reports or the records of the defendant, then, and in that event, we would have had to hold such testimony prohibited by Section 2151.35, Revised Code.

But such are not the facts in this case. We hold that the allowance of such testimony for the purpose of identification of a record which had been the subject of prior allowable testimony did not breach the confidentiality of such records and was not prejudicial error as to this defendant.

Based on all the foregoing, we hereby affirm the verdict and judgment of the Court of Common Pleas.

*Judgment affirmed.*

TROOP, P. J., and STRAUSBAUGH, J., concur.