THE STATE OF OHIO, APPELLEE, *v.* STAMPER, APPELLANT.

THE STATE OF OHIO, APPELLEE, *v.* O'BRIEN, APPELLANT.

THE STATE OF OHIO, APPELLEE, *v.* GAMBLE, APPELLANT.

(Nos. C-850641, -850630 and -850643
— Decided June 11, 1986.)

*Arthur M. Ney, Jr.,* prosecuting attorney, *Michael D. Rudd* and *L. Susan Laker,* for appellee.

*Elizabeth E. Agar,* for appellant Leon Stamper.

*Sand & Stidham* and *Chuck R. Stidham,* for appellant Casey O'Brien.

*Albert J. Rodenberg, Jr.,* for appellant Anthony Gamble.

HILDEBRANDT, J. The record reveals that at approximately 10:00 a.m. on January 31, 1985, the manager of the Wooden Shoe Cafe, Floyd Whaley, was returning from the bank where he had withdrawn approximately $31,000 of the cafe's money. As he exited his car, a man in a hooded, gray jogging suit knocked him to the ground and took approximately $20,000 of the cash. A customer who had come out of the bar and who chased the assailant unsuccessfully for several blocks was later able to identify him as appellant Leon Stamper.

At approximately 10:15 that morning, one Charles Stapleton saw a man in a gray jogging suit walking along a road near the intersection of I-71 and the Norwood Lateral. Stapleton later identified that man as appellant Stamper.

At approximately 10:30 that morning, a truck carrying Brent Lee and Edward Peelman was involved in an accident with a red Monte Carlo at the intersection of I-71 and the Norwood Lateral. Two of the three men in the Monte Carlo were identified as appellants Casey O'Brien and Anthony Gamble. Peelman testified that the third occupant, who was wearing a gray jogging suit, got out of the car and ran up a hill away from the scene of the accident.

Later that day, a taxicab driver picked up a man wearing a gray jogging suit about seven or eight blocks from I-71 and the Norwood Lateral. The man had a large amount of money in his shoe and he requested that the cab driver take him by way of back roads to Latonia, Kentucky.

Appellant Stamper was arrested by a Kentucky police officer on February 2, 1985 in the parking lot of a northern Kentucky motel. Upon searching Stamper for weapons, the officer discovered several bundles of money totally approximately $17,000.

After a trial with the intervention of a jury, all three appellants were found guilty as charged of robbery in violation of R.C. 2911.02, and they were sentenced as appears of record. From those judgments, Stamper, O'Brien and Gamble bring these timely appeals to which we have assigned this court's case Nos. C-850641, C-850630 and C-850643, respectively. We have consolidated the appeals for purposes of this opinion.

Appeal No. C-850641 (Leon Stamper)

Appellant Stamper asserts three assignments of error. For his first assignment of error he urges that the trial court erred when it admitted statements allegedly elicited from him

after he had invoked his *Miranda*[1] rights. We are unpersuaded.

The record discloses that after his arrest in northern Kentucky, Stamper was transported to the Boone County, Kentucky, jail where he was advised of his *Miranda* rights. Stamper informed the officers that he did not wish to talk to them, and that he waived his right to counsel. According to one of the arresting officers, Stamper then inquired concerning the charge for which he was arrested. The officer responded to Stamper that the warrant was for aggravated robbery, which meant that someone was injured. The officer further testified that Stamper then stated, "I didn't hurts nobody, I just ran and grabbed the money and ran." The officer related that, subsequently, Stamper asked whether Norwood would be willing to change the charge, since he did not injure anyone. Further, Stamper indicated that the person who planned the robbery wanted Stamper to carry a gun or baseball bat but that he did not take any weapons because he did not want to hurt anyone. The court permitted this testimony to stand over objections by Stamper's counsel.[2]

To begin our analysis of Stamper's first assignment of error, we note that the Ohio Supreme Court has held that:

"In deciding whether a defendant's confession is involuntarily induced, the court should consider the totality of the circumstances, including the age, mentality, and prior criminal experience of the accused; the length, intensity, and frequency of interroga-tion; the existence of physical deprivation or mistreatment; and the existence of threat or inducement." *State* v. *Edwards* (1976), 49 Ohio St. 2d 31, 3 O.O. 3d 18, 358 N.E. 2d 1051, paragraph two of the syllabus, vacated as to the death penalty (1978), 438 U.S. 911.

We cannot say that the trial court erred in admitting Stamper's statements, because the evidence contained in the record supports the conclusion that the inculpatory utterances were not secured as a result of any custodial interrogation of Stamper, but were volunteered by him. We therefore conclude that in the totality of the circumstances, Stamper's statements were voluntary and constituted a knowing waiver of his right to remain silent. *Oregon* v. *Bradshaw* (1983), 462 U.S. 1039, 1046; *Edwards, supra*. See, also, *State* v. *Osborn* (Nov. 2, 1983), Hamilton App. No. C-821007, unreported. Accordingly, we overrule Stamper's first assignment of error.

Stamper next avers that the trial court erred when it admitted identification evidence from a highly unreliable observer who was subjected to a suggestive photo-array procedure. We find this second assignment of error to be feckless.

The record reveals that the investigating officers displayed to one of the witnesses a photo array consisting of six pictures, and that the witness knew that within the array was a suspect's photograph. The court permitted the witness to testify that with such knowledge he selected the appellant's

---

[1] *Miranda* v. *Arizona* (1966), 384 U.S. 436, 36 O.O. 2d 237.

[2] The record reveals that appellant's counsel was originally under the impression that the statements by Stamper were made after he had waived his *Miranda* rights. However, upon cross-examination, ap-pellant's counsel elicited from the officer the fact that Stamper had not waived such rights. The trial court permitted Stamper's counsel to question the officer further pursuant to an oral motion to suppress. During the questioning the officer maintained that Stamper's statements were spontaneous utterances.

picture from the array. The witness told the court that he had chased the person running from the scene of the crime *sub judice*. The witness acknowledged that from approximately 3:00 a.m. until 8:30 a.m. on that day, he had consumed at least six beers and two mixed drinks. However, the witness also informed the court that during the chase the robber had removed a hood, shook his head and turned his face toward the witness.

From our review of the record, we cannot say that the procedures surrounding the photo array were so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification. *Simmons v. United States* (1968), 390 U.S. 377, 384. See, also, *State* v. *Kiser* (Aug. 21, 1985), Hamilton App. No. C-840820, unreported, in which this court stated that:

"* * * Common sense tells us that when police display a photographic array to an eyewitness to the crime, the police obviously believe it contains a picture of the criminal. This may be called a 'suggestion' that one picture of the array shows the culprit. * * *" *Id.* at 3.

Nor can we say that the witness' in-court identification of Stamper was unreliable. The weight to be given the evidence and the credibility of the witnesses are primarily for the trier of fact. *State* v. *DeHass* (1967), 10 Ohio St. 2d 230, 39 O.O. 2d 366, 227 N.E. 2d 212, paragraph one of the syllabus. Stamper's second assignment of error is overruled.

For his third assignment of error Stamper declares that:

"The trial court erred to the defendant's prejudice in failing to declare a mistrial and grant the defendant a new trial when it appeared that defendant had been improperly impeached before the jury with evidence of an inadmissible conviction."

We do not agree.

During the proceedings below, the assistant prosecutor asked of Stamper:

"Q. Think back over the last ten years. Were you convicted of a crime of dishonesty or a crime punishable by one year or more in jail?

"Sir, I would like to call your attention, if I might, back to April 28, 1982, on that date do you remember being arrested in Frankfort, Kentucky and charged on criminal mischief which is classed to a felony in Kentucky, sentenced to a year and given two years['] probation?

"A. What I was told was — I was sitting in jail for 6 days for something I didn't do. I was told if I pleaded guilty they would drop it to a misdemeanor.

"Q. You don't know if it was dropped to a misdemeanor?

"A. I don't know. A year and a half later the man sued me, tried and said that I done this crime and it was proven that I didn't when he sued me.

"[Assistant Prosecutor]: But you were convicted. Nothing further."

At Stamper's sentencing hearing it was revealed that he was in fact convicted of a misdemeanor rather than a felony. Stamper's counsel then moved for a mistrial on the ground that the evidence of the conviction was not admissible under Evid. R. 609.[3]

We agree with appellant Stamper that the question concerning the

---

[3] Evid. R. 609 provides in part:

"(A) General rule. For the purpose of attacking the credibility of a witness, evidence that he has been convicted of a crime shall be admitted if elicited from him or established by public record during cross-examination but only if the crime (1) was punishable by death or imprisonment in excess of one year under the law under which he was convicted, or (2) involved dishonesty or false statement, regardless of the punishment whether based upon state or federal statute or ordinance."

misdemeanor conviction was improper. *State* v. *Cox* (1975), 42 Ohio St. 2d 200, 71 O.O. 2d 186, 327 N.E. 2d 639; *Wagner* v. *State* (1926), 115 Ohio St. 136, 152 N.E. 28. However, we perceive no prejudice to Stamper due to the overwhelming evidence of his guilt which has been heretofore set forth in this opinion. An appellate court will not reverse a judgment on the basis of any error that is harmless. Crim. R. 52(A). Accordingly, we overrule Stamper's third assignment of error and we affirm the judgment of the trial court as it pertains to him.

Appeal Nos. C-850630 and C-850643 (Casey O'Brien and Anthony Gamble)

Appellants O'Brien and Gamble each assert two assignments of error. They each allege as their first assignments of error that the trial court erred in overruling their respective motions for a mistrial after a juror indicated that she changed her mind regarding the guilty verdict as to them. We find the assignments to be without merit.

The record reveals that after the jury rendered its verdict of guilty as to all three defendants, the jury was properly polled at the request of defense counsel and each juror agreed that the verdict as read by the court was her true verdict. The jury was then discharged. The record further reveals that on the following morning, one of the jurors contacted the trial judge and indicated to him that she had a change of mind as to O'Brien and Gamble. Counsel for O'Brien and for Gamble then moved for a mistrial, which motions were overruled by the trial court after oral arguments.

The *aliunde* rule in Ohio provides that the verdict of a jury may not be impeached by the statement of a member of a jury unless there is evidence *aliunde, i.e.,* from some other source, to impeach the verdict.[4] *State* v. *Adams* (1943), 141 Ohio St. 423, 25 O.O. 570, 48 N.E. 2d 861; *Kent* v. *State* (1884), 42 Ohio St. 426. In applying this rule, the Ohio Supreme Court recently stated that " '* * * [it] would be a dangerous precedent to establish in this state were we to announce the principle that jurors, after their separation, should be allowed to change their verdict to conform to their real intention * * *.' " *Cleveland Elec. Illum. Co.* v. *Astorhurst Land Co.* (1985), 18 Ohio St. 3d 268, 274, 18 OBR 322, 327, 480 N.E. 2d 794, 800, quoting *Long* v. *Cassiero* (1922), 105 Ohio St. 123, 126, 136 N.E. 888, 889.

The record in the case *sub judice* contains only the statement of one juror, made after the jury had been discharged, that she had changed her mind. There is no evidence to support a finding that the verdict was anything

---

[4] The *aliunde* rule is codified in Evid. R. 606(B), which provides:

"(B)  Inquiry into validity of verdict or indictment. Upon an inquiry into the validity of a verdict or indictment, a juror may not testify as to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon his or any other juror's mind or emotions as influencing him to assent to or dissent from the verdict or indictment or concerning his mental processes in connection therewith. A juror may testify on the question whether extraneous prejudicial information was improperly brought to the jury's attention or whether any outside influence was improperly brought to bear on any juror only after some outside evidence of that act or event has been presented. However a juror may testify without presentation of any outside evidence concerning any threat, any bribe, any attempted threat or bribe, or any improprieties of any officer of the court. His affidavit or evidence of any statement by him concerning a matter about which he would be precluded from testifying will not be received for these purposes."

other than correct in every respect, as well as duly agreed to and signed by all of the jurors considering the case. See *Astorhurst, supra.* Accordingly, the first assignments of error of both O'Brien and Gamble are overruled.

Appellant O'Brien asserts as his second assignment of error that the trial court erred in overruling his Crim. R. 29 motion for acquittal. Appellant Gamble's second assignment of error alleges that the guilty verdict was against the sufficiency of the evidence. We choose to address these two assignments together, and for the reasons that follow we find them to be meritorious.

The complicity statute, R.C. 2923.03, provides in relevant part:

"(A) No person, acting with the kind of culpability required for the commission of an offense, shall do any of the following:

"* * *

"(2) Aid or abet another in committing the offense[.]"

The robbery statute, R.C. 2911.02, states in part as follows:

"(A) No person, in attempting or committing a theft offense * * * or in fleeing immediately after such attempt or offense, shall use or threaten the immediate use of force against another."

Theft, in turn, is defined in R.C. 2913.02(A), which provides that "[n]o person, with purpose to deprive the owner of property or services, shall knowingly obtain or exert control over either the property or services * * *."

Therefore, the proof against O'Brien and Gamble had to establish, at a minimum, that they aided or abetted Stamper in committing the robbery, with purpose to deprive Floyd Whaley of the $20,000. However, the record *sub judice* reveals only that O'Brien and Gamble were in an automobile with an individual dressed in a gray jogging suit approximately thirty minutes after the robbery. We have searched the record in vain for any other evidence to show that these appellants participated in the robbery in any way or that they had any knowledge of Stamper's actions.

Thus, in considering the evidence relating to O'Brien's and Gamble's involvement in the robbery, the possibilities run from their merely providing transportation for a stranger whom they saw walking along the road, to their active aid in planning the robbery and in providing the means for Stamper's getaway. Such evidence does not meet the test enunciated in *State* v. *Kulig* (1974), 37 Ohio St. 2d 157, 66 O.O. 2d 351, 309 N.E. 2d 897, because it is not irreconcilable with a reasonable theory of O'Brien's or Gamble's innocence. See *State* v. *Bentz* (1981), 2 Ohio App. 3d 352, 2 OBR 408, 442 N.E. 2d 90; *State* v. *Lee* (App. 1974), 69 O.O. 2d 158, 322 N.E. 2d 684.

Accordingly, with respect to appellant O'Brien's second assignment of error, we have carefully reviewed the record, construing the evidence in a light most favorable to the state, and we cannot say that the evidence is such that reasonable minds could reach different conclusions as to whether each element of the crime had been proven beyond a reasonable doubt. *State* v. *Bridgeman* (1978), 55 Ohio St. 2d 261, 9 O.O. 3d 401, 381 N.E. 2d 184. Regarding appellant Gamble's second assignment of error, we determine that there is an absence of substantial evidence upon which the jury could reasonably conclude that all the elements of the offense had been proven beyond a reasonable doubt. *State* v. *Eley* (1978), 56 Ohio St. 2d 169, 10 O.O. 3d 340, 383 N.E. 2d 132, syllabus; *State* v. *Martin* (1983), 20 Ohio App. 3d 172, 20 OBR 215, 485 N.E. 2d 717. We therefore sustain O'Brien's and Gamble's second assignments of error.

The judgment of the court pertaining to appellant Stamper (case No. C-850641) is affirmed. The judgments of the trial court pertaining to appellants O'Brien and Gamble (case Nos. C-850630 and C-850643, respectively) are reversed and these two appellants are ordered discharged.

*Judgment accordingly.*

KEEFE, P.J., and KLUSMEIER, J., concur.